UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

SCOTT SWANSON,

                Plaintiff,                                Case No. 16-cv-705

    v.

EPIC SYSTEMS CORPORATION,

                Defendant.

---

## DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

---

Respectfully submitted:

MICHAEL BEST & FRIEDRICH LLP
Amy O. Bruchs, SBN 1021530
Holly E. Courtney, SBN 1081696
One South Pinckney Street, Suite 700
Madison, WI 53703
Phone: 608.257.3501
Fax: 608.283.2275
Email: aobruchs@michaelbest.com
       hecourtney@michaelbest.com

*Attorneys for Defendant, Epic Systems Corporation*

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................ i

INTRODUCTION ................................................................................................... 1

UNDISPUTED FACTS .......................................................................................... 2

Summary Judgment Standard .............................................................................. 2

ARGUMENT .......................................................................................................... 3

I.   Swanson Cannot Prove that Epic Did Not Hire Him Because Of His Age. ................ 3

   A.   The ultimate (and penultimate) decision maker(s) did not know Swanson was over 40. ................................................................................................ 4

   B.   Swanson cannot show a *prima facie* case of discrimination. .................................. 6

     1.   Swanson did not meet the written criteria for the trainer position. ................ 6

     2.   Swanson cannot show that Epic treated similarly situated applicants under 40 more favorably than him. ................................................................. 12

   C.   Epic did not hire Swanson for legitimate non-discriminatory reasons. ............ 15

   D.   Swanson presents zero evidence of pretext. .......................................................... 16

   E.   Dr. Mullins' report does not raise any reasonable inference of discrimination. 20

CONCLUSION ...................................................................................................... 23

## INTRODUCTION

The Defendant Epic Systems Corporation ("Epic") submits this brief in support of its Motion for Summary Judgment, seeking judgment on the entirety of Scott Swanson's discrimination claim[1] under the ADEA.  Epic should be granted summary judgment based upon at least five independently dispositive reasons related to the elements of his disparate treatment claim: (1) the decision-maker, Allison Stroud, who never met Swanson, did not know his age when she rejected him; (2) Swanson was not qualified for the trainer position because his poor and jumpy work history ███████ ████████████████████████████████████████████; (3) Swanson has not identified and cannot identify any similarly-situated applicants (i.e., those with poor work history ███████████████████, who were offered a trainer position by Allison Stroud) who are under the age of 40; (4) Epic offered legitimate, non-discriminatory reasons for his rejection—that he had a poor and jumpy work history which could not be overcome by his other qualifications and assessments, which were below Epic's minimums; and (5) there is no evidence that the "real reason" for Swanson's rejection was his age.

Swanson has zero evidence to prove that his age was the "but for" cause, i.e., *the reason*, for his rejection from Epic.  As the Seventh Circuit explains, "summary judgment is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events."

---

[1] Swanson is pursuing a disparate treatment claim only. His lawyers conceded by letter dated June 15, 2017 to counsel for Epic that "Swanson did not advance a disparate impact claim in his complaint, and is not alleging one in this matter." (Courtney Decl. Exh. D.)

*Diadenko v. Folino*, 741 F.3d 751, 757-58 (7th Cir. 2013) (internal quotations omitted). Swanson has nothing to "put up." To cover for this, Swanson attempts to rely solely on raw statistics, improperly blurring the elements of a disparate treatment claim with what would be an equally-deficient disparate impact claim. But Swanson cannot use statistics which do not to take into account the necessary context for a meaningful comparison, including the particular decision-maker and applicable hiring criteria— to prove up discriminatory intent.

All Swanson has shown and can show is that he is one of the 98-99% of all individuals who inquired about a job with Epic but were determined to be not qualified because of legitimate and non-discriminatory reasons, and one of the hundreds of applicants for a trainer position—the majority of whom are presumably (based upon college graduation date) under age 40—who were rejected for poor work history.

For these reasons, the Court should grant summary judgment and dismiss Swanson's Complaint in its entirety.

## UNDISPUTED FACTS

A full statement of the material, undisputed facts is set forth in Defendant's Proposed Findings of Fact, which accompanies this brief.

## SUMMARY JUDGMENT STANDARD

Summary judgment is not a "disfavored procedural shortcut," but is "an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment gives courts a mechanism to weed out "weak factual

claims." *Collins v. Associated Pathologists, Ltd.*, 844 F.2d 473, 476 (7th Cir. 1988), *cert. denied,* 488 U.S. 852 (1988). Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In ruling on a motion for summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.  The Seventh Circuit does not require the Court to deny summary judgment on the basis of speculative theories or improbable plots, for neither creates a genuine issue of material fact.  *See Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1184 (7th Cir. 1993) ("([F]anciful speculations would not defeat a motion for directed verdict and therefore cannot stave off a motion for summary judgment either.")

**ARGUMENT**

**I.     SWANSON CANNOT PROVE THAT EPIC DID NOT HIRE HIM BECAUSE OF HIS AGE.**

The ADEA prohibits employers from "fail[ing] or refus[ing] to hire or discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, *because of such individual's age*."  28 U.S.C. § 623(a)(1) (emphasis added).  This is an intent-based standard.  To prevail under the disparate treatment theory and to avoid summary judgment, a plaintiff must prove by a preponderance of the evidence that his employer

would not have taken the challenged employment action "but-for" the plaintiff's age, i.e. that "age was the 'reason' the employer decided to act." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009); and *Ripberger v. Corizon, Inc.*, 773 F.3d 871, 880 (7th Cir. 2014). Notably, this is a more stringent requirement than what is required for Title VII claims.

Epic is entitled to summary judgment for the following independently-dispositive reasons: (A) Epic's decision-maker(s) had no knowledge of his age; (B) Swanson cannot show a *prima facie* case of discrimination because (1) he did not meet the stated qualifications for the position, and (2) he cannot identify any similarly situated candidate who was treated more favorably than him; (C) Epic declined to offer him a position for legitimate, non-discriminatory reasons—his undisputedly poor and jumpy work history that could not be overcome by his other performance measures, which were below Epic's minimum requirements; and (D) Swanson cannot present any evidence of pretext.

### A.   The ultimate (and penultimate) decision maker(s) did not know Swanson was over 40.

Swanson's claim cannot prevail under any method of proof under the ADEA because his age was not known, much less considered, when Epic rejected his candidacy for the trainer position.  (DPFOF ¶¶ 61, 67-68.)  Two key events resulted in his rejection.   First, Carl Dvorak, Epic's President, ████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████, "Why are we considering an offer in the first place?" (DPFOF ¶¶ 52-57.)  He then sent Swanson's candidacy back to

Stroud for reevaluation. (DPFOF ¶ 59.)  Dvorak did not know how old Swanson was. (DPFOF ¶ 61.)  Because Swanson's college graduation dated was shown as 2003 in his application packet, Dvorak, if he had tried to determine Swanson's age, would have presumed Swanson was a millennial. (DPFOF ¶ 62.)

Second, Stroud reevaluated Swanson's candidacy, and did not know how old he was.  (DPFOF ¶¶ 67-68.)  Dvorak's direction was that Stroud re-evaluate Swanson as a candidate "in total" (DPFOF ¶ 59), which she did, ████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ██████████████████████████████  She did not, however, know or consider Swanson's age. (DPFOF ¶¶ 67-68.)

Epic cannot be held liable for rejecting a candidate "because of" his age where the decision maker(s) had no knowledge of the plaintiff's age.  *See Tolson v. City of Chicago*, No. 12-cv-5530, 2016 U.S. Dist. LEXIS 34138 (N.D. Ill. March 16, 2016) (plaintiff failed to show a *prima facie* case of ADEA discrimination where the decision-maker was unaware of the plaintiff's age); *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 932 (7th Cir. 1995) (holding that employer cannot be liable under ADA for firing its employee when it had no knowledge of his disability); *Wineberger v. Racetrac Petroleum, Inc.*, No. 5:14-cv-653-Oc-30PRL, 2015 U.S. Dist. LEXIS 170598, at * 13 (M.D. Fl. Dec. 22, 2015)("Because Plaintiff cannot demonstrate that the ultimate decision-maker was aware of her protected status . . . she cannot establish a *prima facie* case of age discrimination.").  For this reason alone, Swanson's claim fails and summary judgment should be granted.

**B.     Swanson cannot show a *prima facie* case of discrimination.**

Even if the decision makers were aware of Swanson's age, which they were not,
Swanson cannot establish a *prima facie* case of discrimination.   To prove up his claim,
Swanson must establish a *prima facie* case consisting of four elements: (1) he was over
40, (2) he applied for an open position for which he was qualified; (3) he did not receive
the position; and (4) those who were hired were under 40 and had "similar or lesser
qualifications." *Menon v. Waukesha Cty. Tech. Coll.*, No. 13-CV-704, 2015 U.S. Dist. LEXIS
75576, at *15 (W.D. Wis. June 11, 2015)(citing *Whitfield v. Int'l Truck & Engine Corp.,* 755
F.3d 438, 444 (7$^\text{th}$ Cir. 2014)).   Here, Swanson's claim fails because he cannot show
elements (2) or (4).

### 1.     Swanson did not meet the written criteria for the trainer position.

Swanson cannot prove that he was qualified for the trainer position for several
reasons.  Epic is extremely selective in determining whether candidates are qualified for
any position, including the trainer position.  (DPFOF ¶¶ 2-5.)  Trainers are responsible
for training customers' project staff on underpinnings of Epic's software, the
complexities on how to configure it, and how to configure it safely—they have to have
the ability to become "subject matter experts" on Epic's complex electronic medical
records software. (DPFOF ¶¶ 28-31.)  Though, even if Swanson met the qualifications
for the position—which he did not—given the importance and complexity of the role,
Epic is permitted under the law to hire only the most qualified candidate rather than
the first minimally qualified candidate. *Mason v. Continental Ill. Nat'l Bank,* 704 F.2d 361,

364-66 (7th Cir. 1983)(when filling skilled positions, employers are entitled to hire only the most qualified candidates).

For purposes of summary judgment[2], Swanson did not meet the qualifications for the trainer position for two key reasons that cannot be disputed: (1) his work history, which included significant gaps and recent jumpiness  (DPFOF ¶¶ 72-83), and (2) ███████████████████████████████████████████████████████

████████████████████████████      ███████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████

Swanson will likely argue that he was qualified in other regards, such as having experience as a teacher ██████████████████, and that Stroud's direct reports approved him for hiring.  However, despite Swanson passing the ███████ ████████████████, Epic is entitled to weigh qualification with his other undisputed deficiencies. *Dunn v. Nordstrom, Inc.,* 260 F.3d 778, 787 (7th Cir. 2001) (holding employer entitled to weigh plaintiff's accomplishments against deficiencies). In any event, in "determining whether the applicant was qualified for the open position, the employee's appraisal of his own qualifications has no evidentiary value." *Sembos v. Philips Components*, No. 00 C 4651, 2003 U.S. Dist. LEXIS 4154, at *20-21 (N.D. Ill.

---

[2] Should this case proceed to trial, Epic will present additional reasons why Stroud determined that other aspects of Swanson's candidacy did not overcome his poor work history, including poor interview feedback, inadequate reference checks, and poor and jumpy academic history. Stroud testified that she considered these factors in re-evaluating Swanson's candidacy "in total" but Epic is not obligated to get bogged down in the subjective aspects of Swanson's candidacy (which are likely to be disputed by Plaintiff), when objective, irrefutable reasons existed to support Epic's Motion.

Mar. 11, 2003) (citing *Rabinowitz v. Pen*, 89 F.3d 482, 487 (7th Cir. 1996) and *Dey v. Colt Constr. & Dev.*, 28 F.3d 1446, 1460 (7th Cir. 1994)).

Additionally, the conclusions of the non-decision makers (like Tanya Bui) regarding Swanson's qualifications are irrelevant to Stroud's independent determination that Swanson was not qualified for the position. *See, e.g., Willis v. Marion Cty. Auditor's Office*, 118 F.3d 542, 547 (7th Cir. 1997) ("when the causal relationship between the subordinate's . . . motive and the employer's ultimate decision is broken, and the ultimate decision is clearly made on an independent and a legally permissive basis, the bias of the subordinate is not relevant"); *Jardien v. Winston Network, Inc.*, 888 F.2d 1151, 1155 (7th Cir.1989) (noting that actions and comments by employees not involved in a discharge decision cannot provide a basis for a determination of discrimination).

### a. Swanson's work history disqualified him from employment.

Swanson was not qualified for the position based on his work history. (DPFOF ¶ 72.) Candidates must have a history of academic and professional success without a ███████████████████████████████████████████████. (DPFOF ¶ 33.) █████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████ Swanson fell squarely

within this candidate type. Epic makes an incredible investment in time and money in

new employees, including trainers, training them to become subject matter experts in

Epic's software. (DPFOF ¶ 17.)   Because this investment takes time to recoup, Epic

wants employees who will likely remain with Epic for the long term. (DPFOF ¶ 18.)

Swanson cannot dispute that his job application █████████████████████

██████████████████████████████████████.  First, he had significant

gaps in his employment, including an 8-year gap between 1988 and 1996 and a 5-year

gap between 1998 and 2001.  (DPFOF ¶ 76.)  Second, Swanson's application also

included multiple gaps in his education, including a 7-year gap between high school

and his first noted educational experience, a certificate in broadcasting, followed by

another 3-year gap in education before heading to UW-Richland Center (1991-2001)

and Edgewood College (2001-2004) to get his bachelor's degree. (DPFOF ¶¶ 72-83.)

As Swanson also indicated in his telephone interview (though omitted from his

resume and application) he also went to college in 1988, dropped out and became a

"lost soul for a long time." (DPFOF ¶ 75.)

Third, though Swanson had a steady term of employment with Sauk Prairie as

a teacher, when he applied with Epic in October 2014 he had recently quit his

teaching job in August 2014 and had just started working in a new non-teaching

academic position in the West Allis-West Milwaukee School District. Within only two

months, he was looking to make yet another change, by applying with Epic. (DPFOF

¶¶ 81-82.) ███████████████████████████████████████

███████████████████ :



█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

████

 █   ██████████████████████████████████████

Swanson  also  cannot  dispute  that ████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████

    █████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████



### c.   Subsequently-learned information about Swanson reaffirms he is not qualified for the trainer position.

During the course of this litigation, Epic has discovered numerous other issues with Swanson's application and background which further renders him unqualified for the position. *Weber v. Tada,* 589 Fed. Appx. 563, 567-68 (2d Cir. 2014) (holding that district court properly considered the use of after-acquired evidence to confirm the non-discriminatory reason for the employee termination.)  It also cuts off any liability even if Swanson suffered any harm on behalf of Epic's conduct, which he did not. *McKennon v. Nashville Banner Pub'l Co.,* 513 U.S. 352, 360-362 (1995) (stating that back-pay period should be "from the date of the unlawful discharge to the date the new information was discovered").

Swanson's work and academic history is even more poor and jumpy than Swanson represented to Epic during his application. (DPFOF ¶¶ 112-117.)  First, Epic has learned that after high school, his first college was Northern Iowa University, not

UW Richland Center as presented on his application. (DPFOF ¶¶ 112, 115.)  This was a material misrepresentation on his application, where the form requires an applicant to list post-high school education beginning with the "First College/University." (DPFOF ¶ 115.)  Second, Swanson also now admits that he dropped out of Northern Iowa after being placed on academic probation, after getting poor grades and missing classes. (DPFOF ¶¶ 112-15.)   This means he overstated or omitted his true undergraduate grade point average, which is of critical importance to Epic.  (DPFOF ¶¶ 36-37, 116.)  Third, Swanson did not disclose to Epic but has now admitted having made numerous more jumps from job to job, such as bartending, disc jockeying, working in construction, painting, being "cheese caretaker," a tour guide, and a warehouse worker.  (DPFOF ¶ 117.)

Not only do these issues reaffirm that Swanson is not qualified for the trainer position, his falsifications on and omissions from his application disqualify him from employment with Epic.  When Swanson signed his job application, he agreed that "any false statement, omission, or misrepresentation made in connection with my past record or any other part of my application for employment with the company will be justification for dismissal."  (DPFOF ¶ 118.)

### 2. Swanson cannot show that Epic treated similarly situated applicants under 40 more favorably than him.

Swanson also cannot show the last prong of a *prima facie* case, the "similarly situated" prong.  *Foster v. Principal Life Ins. Co.* 247 Fed. Appx. 836, 839 (7th Cir. 2007.) An ADEA plaintiff must both identify the similarly situated substantially younger

applicants, and then show that they were treated more favorably then him. *Tubergen v. St. Vincent Hosp. and Health Care Ctr., Inc.*, 517 F.3d 470, 475 (7th Cir. 2008)(stating that a plaintiff must establish that "other similarly situated employees who were not members of his protected class or were substantially younger were treated more favorably"). Swanson cannot do either.

In order to be similarly situated, the individuals "must be directly comparable to [the plaintiff] in all material respects." *Zayas v. Rockford Mem'l Hosp.*, 740 F.3d 1154, 1158 (7th Cir. 2014) (internal quotations omitted)(quoting *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002)); *see also Coleman v. Donahoe*, 667 F.3d 835, 841 (7th Cir. 2012). The comparator(s) should include only those who shared a common decision maker and "were similarly situated with respect to performance, qualifications, and conduct." *E.g., Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003) (citing *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-618 (7th Cir.2000)). If a plaintiff fails to identify any similarly situated individuals, he cannot show *prima facie* case of discrimination and his claim fails. *St. Louis v. Am. Family Mut. Ins. Co.*, 300 F.2d Supp. 813, 827 (W.D. Wis. 2003) (granting summary judgment for employer because plaintiff failed to show any evidence that younger interviewees were "similarly situated.")

Here those who are directly comparable to Swanson in "all material respects" include only those who, at a minimum, (1) applied for the same application trainer position, (2) were offered jobs by Allison Stroud, (3) had an inadequate work history that contained extensive gaps, and (4) ██████████████████████████

██████████████████.  *Radue,* 219 F.3d at 618 (noting importance of showing common supervisor, because different supervisors make employment decisions in different ways); *Barricks v. Eli Lily and Co.*, 481 F.3d 556, 559-60 (7th Cir. 2007) (disregarding comparators proffered by plaintiff in an effort to defeat summary judgment because they were not supervised by the person who "played the decisive role in giving performance evaluations and determining raise amounts"). Swanson has not presented and cannot present any such comparator much less show that such a similarly situated applicant was treated more favorably than him.

Here, the candidates that Swanson asserts are similarly situated (according to his discovery responses) are those applicants who were hired and (1) have advanced degrees, (2) who interviewed in October 2014, and (3) who Swanson believes have gaps in their education or employment.  (DPFOF ¶ 119.)  This assertion misses the point.  The advanced degree factor is completely irrelevant, as the trainer position is an entry level position that requires only a bachelor's degree, not an advanced degree.  (DPFOF ¶ 33.)  More importantly, Swanson does <u>not</u> identify any similarly situated applicant "comparable in all respects" to him by (1) decision-maker (i.e., Stroud), (2) ███████████ ████████████████████████████████████, and (3) ███████████████ ████.  <u>This is because there are no candidates who</u> ████████████████████ ███████████  <u>and were hired by anyone, much less Stroud, in the two years proceeding November of 2014.</u>  (DPFOF ¶ 103.) ███████████████████████ ████████████████████████████████████████████████████████ ███████████████████████████████████████████

Swanson also cannot dispute that Epic rejected over 500 trainer applicants for poor work history from 2012 to present, and the majority of these rejections concerned applicants under the age 40, as presumed based on their college graduation dates. (DPFOF ¶¶ 98-100.)   Swanson cannot dispute that in 2014 when he applied, Epic rejected applicants for trainer positions based on, in whole or in part, "work history-poor/jumpy" 105 times.  (DPFOF ¶ 101.)   Again, a majority of these applicants were under age 40.  (DPFOF ¶ 102.)  Of course, the ADEA does not require employers to treat those over 40 more favorably than those under 40.  *Shager v. Upjohn Co.,* 913 F.2d 398, 401 (7th Cir. 1990) ("The statute is not a guarantee of tenure for an older worker, though not all juries understand this.")

### C.    Epic did not hire Swanson for legitimate non-discriminatory reasons.

Even if Swanson could show a *prima facie* case of discrimination, which he cannot, his claim fails because Epic declined to hire him for legitimate, non-discriminatory reasons.  *Phair v. New Page Corp.*, 708 F. Supp. 2d 57, 66-68 (D. Me. 2010) ("Because Defendants have established a legitimate, non-discriminatory basis for Plaintiff's termination, the presumption of age discrimination drops away.").

Stroud determined that Swanson was not qualified for the trainer position because he had an unsatisfactory work history, which included significant gaps in employment, and his other qualifications and performance measures— ███████████ ████████████████████████████████████████████████—were not strong enough to overcome his inadequate work history. (DPFOF ¶¶ 64-92.) ███████████ ████████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████ Swanson cannot present any evidence to refute this.  Indeed, courts have concluded that a gap in employment and/or sporadic work history is a legitimate, non-discriminatory reason for employment decisions.  *E.g.*, *Boyajian v. Starbucks Corp.*, 587 F. Supp. 2d 295 (D. Me. 2008) (five-year gap in work history constituted legitimate, non-age based reason under the ADEA for not hiring 53-year-old); *Hawkins v. Mary Hitchcock Mem'l Hosp.*, No. 99-1113-M, U.S. Dist. LEXIS 9171, at * 9 (D. N.H. Jan. 30, 2001) (describing "sporadic work history with large gaps in employment" as a legitimate nondiscriminatory justification under Title VII).

### D.     Swanson presents zero evidence of pretext.

Swanson simply cannot provide any evidence of pretext to avoid summary judgment.  In order to show pretext for an ADEA claim, Swanson must show that the Epic's stated reasons for its adverse employment decision were "made up to cover up their discriminatory reasons." *Keri v. Bd. of Trs. of Purdue Univ.*, 458 F.3d 620, 646 (7th Cir. 2006).  Under the ADEA, pretext will not be found where an employer holds an honest belief for the reason it offers. *Benuzzi v. Bd. of Educ.*, 647 F.3d  652, 663 (7th Cir. 2011).  A pretext is "a lie, specifically a phony REASON for some action."  *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1175 (7th Cir. 2002) (citing *Russell v. Acme-Evans Co.*, 51 F.3d 64, 68 (7th Cir. 1995)).  To show pretext, the complainant must demonstrate either that the

proffered reason has no basis in fact or that it did not actually motivate the adverse employment action. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000); *Fuka v. Thomson Consumer Eleccs.*, 82 F.3d 1397, 1404 (7th Cir. 1996). As repeatedly explained by the Seventh Circuit, "courts do not sit as super personnel departments, second-guessing an employer's facially legitimate business decisions." *Ajayi v. Aramark Business Servs.*, 336 F.3d 520, 532 (7th Cir. 2003).

First, Swanson cannot show pretext for age discrimination where the penultimate and ultimate decision makers (Dvorak and Stroud, respectively) did not know Swanson's age. (DPFOF ¶¶ 61, 67-68.) *Harris v. Dow Chem. Co.*, No. 12-3713, 2013 U.S. Dist. LEXIS 162227, at *6-10 (E.D. Pa. Nov. 13, 2013) (plaintiff failed to present a *prima facie* case because the employer testified that she did not know plaintiff's age and there was nothing in workforce recruiting planner's notes to indicate the plaintiff's age), *aff'd* 586 Fed. Appx 843, 846 (3d Cir. 2014) (plaintiff did not show a *prima facie* case because the plaintiff failed to offer any evidence to rebut the employer's testimony that she was entirely unaware of the plaintiff's age when she declined to offer her an interview); *Rabinovitz v. Pena*, 89 F.3d 482, 488 (7th Cir. 1996) ("Proof that an employer did not know of a plaintiff's membership in a protected class would likely preclude any assertion of pretext"); *see also Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 932 (7th Cir. 1995) (holding that employer cannot be liable under ADA for firing its employee when it had no knowledge of his disability).

Second, there is simply no other evidence showing that Epic's proffered reason for Swanson's rejection was not based in fact or that the offered reason was not the

motivating reason for his rejection.  Stroud's stated reason for Swanson's rejection is well-documented, including in Swanson's application history (entered November 19, 2014), which states the reason for his rejection "work history - poor jumpy." (DPFOF ¶¶ 83, 93.)  This is not some reason made up after Swanson filed his discrimination claim.  Moreover, Swanson cannot dispute that he does, in fact, have a work history with gaps and frequent jumps (DPFOF ¶¶ 72-83.)  Swanson also cannot dispute that he did, in fact, have poor assessment scores which did not meet Epic's minimum hiring criteria for the trainer position.  (DPFOF ¶¶ 30-33, 36, 53-57, 87-91.) *Lesch v. Crown & Cork Seal Co.,* 282 F.3d 467, 473 (7th Cir. 2002) ("Where an employer offers multiple independently sufficient justifications for an adverse employment action, the plaintiff-employee must cast doubt on each of them."(citations omitted)).  Any argument that Epic's proffered reason for his rejection is pretext for discrimination is further undermined by the fact that Epic has rejected over 500 trainer applicants for the same cited reason, and the majority of these applicants are (presumably) under age 40, based upon college graduation date.  (DPFOF ¶¶ 99-100.)

Swanson will likely argue that Tanya Bui, a recruiter, told him he was an "ideal candidate" and tentatively offered him a job.  This, even if true, does not show pretext. Bui never had hiring authority over Swanson's application. (DPFOF ¶¶ 65-66.)  *See, e.g., Dominicak-Brutus v. Urban Prop. Servs. Co.,* 217 F. Supp. 2d 911, 918 (N.D. Ill. 2002) ("Speculation by a non-decisionmaker as to the thoughts of the decisionmaker does not qualify as direct evidence of discrimination.")

Any such preliminary offer by Bui was simply a mistake and does not show pretext. *Walker v. Abbott Labs.*, 416 F.3d 641, 644 (7th Cir. 2005) ( "A plaintiff cannot be permitted to manufacture a case merely by showing that the employer does not follow its employment rules with Prussian rigidity."); *Caro v. Principi,* No. 00 C 7792, 2002 U.S. Dist. LEXIS 22690, at *27 (N.D. Ill. Nov. 21, 2002) ("a mistake in application of the VA's internal promotion policy does not support a reasonable inference that Skinner lied when he offered Van Dyke's superior qualifications as the rationale of his decision"); *EEOC v. Grane Healthcare Co.*, No. 3:10-250, 2015 U.S. Dist. LEXIS 123133, at *142-43 (W.D. Pa. Sep. 15, 2015) ("a mere mistake in making a hiring decision is not sufficient to establish a discriminatory animus.").   Moreover, Stroud was not informed that any improper preliminary job offer was given to Swanson when Stroud made her decision. (DPFOF ¶¶ 96-97.)   There is simply no evidence to support that Epic's reasons for rejecting Swanson (which are premised on undisputed material facts) are a cover up for age discrimination; this is a theoretical plot that cannot withstand summary judgment. *Murray v. Chicago Transit Auth.*, 252 F.3d 880, 888 (7th Cir. 2001) (the court has "typically been skeptical of such elaborate plot theories").

Swanson may attempt to provide statistics through his expert, Dr. Mullins, to show pretext.  However, in order to create such an inference of pretext, "a plaintiff's statistical evidence must focus on eliminating nondiscriminatory explanations for the disparate treatment by showing disparate treatment between comparable individuals." *Fallis v. Kerr–McGee Corp.*, 944 F.2d 743, 746 (10th Cir. 1991).  Dr. Mullins' expert report does not consider any variables, qualifications, or even the job requirements for the

trainer position.   (Dkt. # 13, Mullins Depo. Tr. 33.)   Tellingly, Dr. Mullins never reviewed or even asked to review the trainer job posting or job criteria to formulate her opinions. (Dkt. #13, Mullins Depo. Tr. 15.)   As discussed in greater detail below, her expert report is unreliable, incomplete, and fails to show any inference of discriminatory intent required by the ADEA for Swanson's claim to withstand summary judgment.

### E.   Dr. Mullins' report does not raise any reasonable inference of discrimination.

Swanson's reliance on Dr. Mullins' report is problematic, for two reasons. First, Swanson cannot prove up his disparate treatment claim by masquerading it as a disparate impact claim. Second, and more importantly, Dr. Mullins' failure to consider the relevant job criteria means that her report does not create any inference that Stroud's decision to not hire Swanson was a "but for" cause of his rejection from employment.

As to the first point, Swanson has not made and is not pursuing a disparate impact claim[3], where statistical evidence is common.  In any event, a disparate impact claim is "conceptually and factually distinct" from disparate treatment claims.  *Diersen v. Walker,* 117 Fed. Appx. 463, 465-66 (7th Cir. 2004).

---

[3] If he had attempted to pursue such a claim, Epic would have moved to dismiss because the ADEA does not permit applicants to pursue claims under the disparate impact theory of liability. *Kleber v. CareFusion Corp.,* No. 15-cv-1994, 2015 U.S. District. LEXIS 157645, at * 5 (N.D. Ill. 2015) ("[B]ecause Section 623(a)(2) does not authorize disparate impact claims premised on alleged failure to hire, Kleber's disparate impact claim (Count I) fails as a matter of law); *see also E.E.O.C. v. Francis W. Parker Sch.,* 41 F.3d 1073, 1077 (7th Cir. 1994) (holding that an applicant could not pursue disparate impact ADEA claim); *Villareal v. R.J. Reynolds Tobacco Co.,* 839 F.3d 958 (11th Cir. 2016) (holding the same).

As to the whether the report creates an inference of discriminatory intent, the Seventh Circuit has "frequently discussed the dangers of relying on raw data without further analysis or context in the context of employment discrimination disputes." *Barricks v. Eli Lily & Co.*, 481 F.3d 556, 559 (7th Cir. 2007).  As the Seventh Circuit has explained, "statistical evidence which fails to properly take into account nondiscriminatory explanations does not permit an inference of discrimination." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616-17 (7th Cir. 2000).

Here, Dr. Mullins' report ignores any and all non-discriminatory explanations; and therefore provides zero inference of discrimination.  Dr. Mullins' expert report considers only two things: (1) the high school graduation dates of a sample of applicants for trainer positions (though, as she testified, she was not even aware of how the sample of candidates was selected, as she thought it was only a "random sample" (Dkt. #13, Mullins Depo. Tr. 49)) and (2) the probability these applicants would be offered a job based on their age (as presumed by the high school graduation date). Tellingly, Dr. Mullins never looked at the trainer posting or Swanson's application materials.  (Dkt. #13, Mullins Depo. Tr. 15.)  Rather, she only reviewed three sample applications, the Plaintiff's Complaint (but not the Defendant's answer), and then reviewed an excel spreadsheet prepared by Plaintiff's counsel for her "factual" background. (Dkt. #13, Mullins Depo. Tr. 14-15.)

Her report does not address or distinguish between the different decision-makers involved in these hiring decisions.  (Dkt. #13, Mullins Depo. Tr. 28.)  In other words, the pool of applicants she has analyzed is <u>not</u> limited to only those applicants

who were either rejected or offered positions based upon decisions by Stroud. Also, her expert report does not take into account any ███████████████████████

███████████████████████████████████████████████████████.

According to Dr. Mullins, the job requirements for the trainer position are "not important." (Dkt. #13, Mullins Depo. Tr. 33-34.) This is a fatal flaw because it means that her analysis does not control for legitimate factors—such as GPA, ██████████

████████████████--that caused applicants to be rejected. She has included applicants who were rejected for these objective reasons in her pool of "qualified" applicants. Stated another way, Dr. Mullins has not performed a statistical analysis on the likelihood that a qualified applicant would be hired or rejected based upon age.

Because it fails to account for relevant comparators, this report raises zero inference that Swanson's age was the reason Stroud decided not to hire him. As the Seventh Circuit has explained, "[s]tatistical evidence is only helpful when the plaintiff faithfully compares one apple to another without being clouded by thoughts of Apple Pie ala Mode or Apple iPods." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 492 (7th Cir. 2007); *overruled on other grounds, Ortiz v. Werner Enters., Inc.* 834 F.3d 760 (7th Cir. 2016). Dr. Mullins' failure to compare similarly-qualified rejected applicants with similarly-qualified successful applicants (that is, apples to apples) <u>where Stroud was the decision-maker</u> renders her expert report useless in this case and sheds absolutely no light on the sole determinative issue—whether Stroud held a discriminatory animus and declined to hire Swanson based on his age. *Barricks v. Eli Lily and Co.*, 481 F.3d 556, 559-60 (7th Cir. 2007) (disregarding comparators proffered by plaintiff in an effort to

defeat summary judgment because they were not supervised by the person who "played the decisive role in giving performance evaluations and determining raise amounts"). A plaintiff "must do more than merely point to [the protected class] and proclaim: 'Aha! Discrimination.'" *Hague v. Thompson Distribution Co.*, 436 F.3d 816, 829 (7th Cir. 2006) (citing *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1176-77 (7th Cir. 2002) (evidence that no African Americans hired in 2 year time frame anecdotal and insufficient to forestall summary judgment)).

## CONCLUSION

For the foregoing reasons, this Court should grant summary judgment on Defendant's behalf and dismiss Plaintiff's Complaint with prejudice.

Dated this 8th day of September, 2017.

**MICHAEL BEST & FRIEDRICH LLP**

By:   s/Holly E. Courtney
        Amy O. Bruchs, SBN 1021530
        Holly E. Courtney, SBN 1081696
        One South Pinckney Street
        P.O. Box 1806
        Madison, WI 53701-1806

*Attorneys for Defendant Epic Systems
Corporation*